**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| ) | |
| ) | |
| **PATRICK JOYCE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 10-12204-DJC** |
| ) | |
| **THE UPPER CRUST, LLC., JJB HANSON** ) | |
| **MANAGEMENT CO., INC. and** ) | |
| **JORDAN TOBINS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                    **July 21, 2015**

**I.      Introduction**

Plaintiff Patrick Joyce ("Joyce") brings this action against his former employer, The

Upper Crust, LLC. ("Upper Crust"), its principal owner, Jordan Tobins ("Tobins") and JJB

Hanson Management, Inc. ("JJB") (collectively, the "Defendants") alleging retaliation under the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), and Mass. Gen. L. c. 149, § 148A

(the "Wage Act"), as well as Massachusetts common law claims and violation of his civil rights

under Mass. Gen. L. c. 12, § 11I.  D. 64.  Tobins has moved for partial summary judgment on

Joyce's retaliation claims.  D. 87.  Tobins has also moved to strike certain portions of the

affidavit Joyce submitted in support of Joyce's opposition to Tobins's motion for partial

summary judgment.  D. 90 and 91.[1]  For the reasons discussed below, the Court DENIES

Tobins's motion for partial summary judgment, D. 87, and ALLOWS IN PART and DENIES IN

PART Tobins's motion to strike, D. 90 and 91.

## II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material

fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect

the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless

Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir.

1996)).  The movant bears the burden of demonstrating the absence of a genuine issue of

material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477

U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the

allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986), but "must, with respect to each issue on which she would bear the burden of proof at

trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  Borges ex

rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).  "As a general rule, that requires

the production of evidence that is 'significant[ly] probative.'"  Id. (quoting Anderson, 477 U.S.

at 249) (alteration in original).  The Court "view[s] the record in the light most favorable to the

nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20,

25 (1st Cir. 2009).

---

[1] The Court notes that D. 90 and D. 91, titled, respectively, motion to strike and motion to correct, were filed on the same day and are identical.

III.    **Procedural History**

Joyce instituted this action against Tobins and Upper Crust on December 20, 2010.  D. 1.

On March 1, 2011, Upper Crust and Tobins moved to dismiss.  D. 6.  The Court subsequently

allowed Joyce to amend the complaint – adding JJB as a defendant, additional factual allegations

and a claim for intentional infliction of emotional distress against Tobins – and denied without

prejudice the motion to dismiss.  8/9/11 docket entry.  The Defendants then moved to dismiss the

amended complaint, D. 21 and 23, and JJB moved for sanctions, D. 25.  Joyce thereafter moved

to file a second amended complaint ("SAC"), D. 26, and on July 25, 2012, the Court granted

Joyce's motion.  D. 36.  The Court simultaneously granted, without prejudice, Defendants'

motion to dismiss as to Joyce's Massachusetts retaliation claim only and denied JJB's motion for

sanctions.  Id.

Upper Crust and JJB filed a Suggestion of Bankruptcy on October 4, 2012.  D. 56.  On

October 16, 2012, the Court administratively closed the case as to all Defendants without

prejudice to either party moving to restore the action upon final determination of bankruptcy

proceedings.  D. 57.   On December 28, 2012, Joyce moved to reopen the case as to non-debtor

co-defendant Tobins only, D. 58, and the Court subsequently granted the motion, D. 60.

Thereafter, the Court considered Joyce's motion to dismiss Tobins's counterclaims, D. 45, which

had not been resolved prior to the case being closed.  On December 26, 2013, the Court denied

Joyce's motion to dismiss.  D. 73.

On June 6, 2013, Joyce filed a third amended complaint ("TAC") to add a retaliation

claim under the Wage Act, Mass. Gen. L. c. 149 § 148A.  D. 64.  In his TAC, Joyce alleges

retaliation under the FLSA, 29 U.S.C. § 215(a)(3) (Count I), retaliation under Mass. Gen. L. c.

149, § 148A, (Count II), violation of his civil rights under Mass. Gen. L. c. 12, § 11I (Count III),

defamation (Count IV) and intentional infliction of emotional distress (Count V).  Id.  Tobins has

now moved for partial summary judgment as to Joyce's retaliation claims only.  D. 87.  Tobins

also moved to strike certain portions of the affidavit Joyce submitted in support of his opposition

to Tobins's motion.  D. 90 and 91.  The Court heard argument on Tobins's pending motions and

took the matters under advisement.  D. 106.

## IV.    Factual Background[2]

The following facts are as described in Joyce's statement of material facts, D. 85.  Tobins

did not file a statement of material facts in support of his motion for partial summary judgment.[3]

Upper Crust is a limited liability corporation, operating multiple pizzerias in

Massachusetts.  D. 85 ¶ 2.  At all relevant times, Tobins was an owner of Upper Crust.  Id. ¶ 3.

Joyce began working for Upper Crust in 2003 as a counter person in the Brookline location.  Id.

¶ 5.  In 2007, Joyce was promoted to Operations Manager, a position that included "overseeing

the kitchen managers and front of the house managers" at six locations across eastern

---

[2] As a threshold matter, to decide Defendants' motion for summary judgment, the Court must determine what evidence it can consider.  See Fed. R. Civ. P. 56(c).  Tobins has moved to strike certain portions of Joyce's affidavit submitted in support of his memorandum in opposition to Tobins' motion for partial summary judgment.  Specifically, Tobins moves to strike paragraphs ten, thirteen, fourteen, sixteen and twenty of Joyce's affidavit, as well as the third sentence of paragraph nineteen.  Id.  After review of Joyce's affidavit, the Court ALLOWS IN PART Tobins's motion to strike, D. 90 and 91, and therefore STRIKES paragraphs thirteen, sixteen and the third sentence of paragraph nineteen because these sections rely on inadmissible hearsay, simply assert a legal theory and/or are not based upon personal knowledge.  See Joyce Aff., D. 86-1 ¶¶ 13, 16, 19.  Joyce's affidavit otherwise stands.

[3] At oral argument, Joyce argued that Tobins's motion for partial summary judgment should be dismissed as Tobins did not submit a concise statement of material facts in support of his motion in accordance with Local Rule 56.1.  See Mass. L. R. 56.1 (noting that "[m]otions for summary judgment shall include a concise statement of the material facts. . ." and that "[f]ailure to include such a statement constitutes grounds for denial of the motion").  Tobins indicated, however, that for the purposes of summary judgment, he did not dispute the facts as presented by Joyce.  Accordingly, the Court will not dismiss Tobins's motion due to this procedural flaw, but will rely upon Joyce's statement of facts with all reasonable inferences drawn in Joyce's favor.

Massachusetts.  Id. ¶ 7.  In his role as Operations Manager, Joyce had regular contact with Upper Crust owners and upper-level managers, including Tobins.  Id. ¶ 8.

In 2009, the U.S. Department of Labor ("DOL") started an investigation into Upper Crust's wage and hour practices, specifically for unpaid overtime.  Id. ¶ 9.  In July 2009, as a result of the investigation, the DOL ordered Upper Crust to pay $341,545.53 in back wages to current and former employees.  Id.  Following these payments, in August 2009, Tobins attended a meeting with other Upper Crust owners and managers and told employees that they would have to pay the money back to the company if they wanted to keep their jobs.  Id. ¶ 10.  Upset about this requirement to remit back pay, the employees complained to Upper Crust store managers, including Joyce.  Id. ¶ 12.  Joyce then brought the employees concerns to the attention of owner Brendan Higgins ("Higgins"), General Manager ("GM") Barry Proctor ("Proctor") and Chief Financial Officer ("CFO") David Marcus ("Marcus"), notifying them that the employees were very distressed about this ultimatum and that they were becoming uncooperative as a result.  Id. ¶ 16.  Joyce also told Higgins and Marcus that he was concerned that such a requirement was illegal.  Id.  In response, Joyce was simply told to fire any employees who were uncooperative.  Id. ¶ 17.  Joyce also spoke with Upper Crust manager Luciano Botelho ("Botelho") about Tobins's requirement that the employees return their back wages and told Botelho that he was planning to notify the DOL investigator.  Id. ¶ 13, 14.  Botelho was an Upper Crust kitchen manager who Tobins had ordered to tell Upper Crust's Brazilian workers about the requirement to remit their back pay.  Id. ¶ 11.  In January 2010, Joyce called the DOL on his company cell phone and reported Upper Crust's remittance policy.  Id. ¶¶ 18, 29.  The DOL subsequently undertook a new investigation into the Upper Crust's practices and notified Tobins of the

investigation soon afterward.  <u>Id.</u> ¶ 18.  Joyce also informed Botelho that he had contacted DOL. <u>Id.</u> ¶ 15.

After Joyce's internal and external complaints, the behavior of Upper Crust's ownership and upper-level management towards Joyce changed precipitously.  <u>Id.</u> ¶ 19.  The owners told Joyce that he was not working hard enough and began requiring him to clock in and out every day even though salaried employees were not typically required to clock in and out.  <u>Id.</u> ¶ 20. Tobins and the other owners also called Joyce into a "special meeting" in March 2010 where they critiqued his job performance and told him that he was not doing well.  <u>Id.</u> ¶ 21.  Joyce did not believe that his work quality had deteriorated and he was not aware that any Upper Crust manager had ever complained about his work.  <u>Id.</u>  In April 2010, owners Josh Huggard and Tobins called Joyce and yelled at him about a water leak in the Brookline location, despite the fact that the owners had been aware of the leak and were actively engaged in a dispute with the building's management company about the cost of the repairs.  <u>Id.</u> ¶¶ 22, 23.  Although Huggard and Tobins knew that the issue was out of Joyce's control, they called him to yell at him about the problem when they knew that he was away planning his wedding.  <u>Id.</u> ¶ 23.  The next month, on May 18, 2010, Tobins called Joyce in the early morning, accusing Joyce of being involved in a theft that had taken place at the Commonwealth Avenue location of Upper Crust the previous night.  <u>Id.</u> ¶ 24.   During the phone call Tobins screamed and yelled obscenities at Joyce.  <u>Id.</u> ¶¶ 24-25.

As a result of these incidents, Joyce decided that he could no longer work at the company.  <u>Id.</u> ¶ 26.  On May 18, 2010, the same day as Tobins's phone call, Joyce gave notice. <u>Id.</u>  His resignation was effective June 1, 2010.  <u>Id.</u>  Upon receiving his last pay check, Joyce noticed that it was short by several hundred dollars.  <u>Id.</u> ¶ 27.   After contacting Marcus, the

Upper Crust CFO, and another owner about the deficit, Joyce eventually heard from Tobins that the money had been deducted from Joyce's check to cover Joyce's personal use of his company cell phone.  Id. ¶¶ 28, 29.  Tobins indicated that he had reviewed Joyce's cell phone records and had deducted the cost of his personal calls.  Id. ¶ 28.  It was common practice for Upper Crust employees to use company issued cell phones for both business and personal calls.  Id. ¶ 30. Joyce had used the phone for years for both business and personal calls, including his call to the DOL, with the understanding that personal use was permissible.  Id. ¶¶ 29, 30.  Joyce told Tobins that if he did not receive the balance of his final check that he would report it to the DOL.  Id. ¶ 31.  In response, Tobins threatened Joyce saying, "Patrick if you go to the [DOL] I will (expletive) kill you.  I will tell your fiancée that you are cheating on her and I will ruin your life." Id.  Joyce did not receive the balance due on his check, but decided not to notify the DOL.  Id. ¶ 32.

## V.     Discussion

Tobins seeks summary judgment as to Joyce's retaliation claims only, arguing that Joyce has made no showing that Tobins had any knowledge of any of Joyce's alleged complaints to the DOL regarding violations of either the FLSA or the Wage Act.  D. 82 at 5-6.  As such, Tobins argues that he could not be liable for retaliating against Joyce for making a complaint that he did not know about.  Id.

### A.     Count I:  Retaliation Claim Under 29 U.S.C. § 215(a)(3)

Joyce alleges a retaliation claim under the FLSA, which makes it "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related" to the Act.  29 U.S.C. § 215(a)(3).  To state a claim for retaliation under the FLSA,

Joyce must show that: "(1) [he] engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity." Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 102 (1st Cir. 2004). Tobins focuses on the third element. Tobins argues that "[k]nowledge that a person engaged in protected activity is at the heart of any retaliation case," D. 82 at 7, and relies on Kasten v. Saint-Gobain Performance Plastics Corp., ___U.S.___, 131 S. Ct. 1325, 1335 (2011) for the proposition that "it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate because of that complaint."[4]

Considering Joyce's retaliation claim, however, the key inquiry is whether he has shown specific admissible facts "from which a reasonable factfinder could infer that the employer retaliated against him for engaging in the protected activity." Blackie v. State of Me., 75 F.3d 716, 723 (1st Cir. 1996) (citing Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992)). In other words, Joyce need only proffer a "causal connection . . . between the protected conduct and the adverse action." Id. at 723 (emphasis and citation omitted). Joyce must make some showing that Tobins "knew of the plaintiff's protected conduct

---

[4] At the motion hearing, Tobins also relied on Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1 (1st Cir. 2015) and Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63 (1st Cir. 2015) to argue that Joyce must show that Tobins knew about Joyce's protected activity. The Court agrees that Joyce must make some showing that Tobins knew that Joyce complained to the DOL. In the cases cited by Tobins, however, there was no evidence at all that the defendants knew of the plaintiff's protected activity. Ocasio-Hernández, 777 F.3d at 7 (noting that the First Circuit has "consistently held that circumstantial evidence can suffice to show a defendant's knowledge," but concluding that plaintiffs had pointed "to no evidence showing that the defendants they sued had [the requisite] knowledge"); Ameen, 777 F.3d at 70 (acknowledging that a plaintiff "must show that the retaliator knew about [his] protected activity," but noting that in the present case the parties did not dispute that the defendant had no knowledge of the plaintiff's protected activity).

when he [] decided to take the adverse employment action," but "[t]emporal proximity can create an inference of causation in the proper case." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) (citations omitted). "A showing of adverse action soon after an employee engages in protected activity is evidence that there is a causal connection between the adverse action and the protected activity." Cheng v. IDEAssocs., Inc., No. 96-cv-11718-PBS, 2000 WL 1029219, at *5 (D. Mass. July 6, 2000). "Such a causal connection creates an inference of retaliation." Id.; Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988) (holding that "[a] showing of discharge soon after the employee engages in [protected activity] . . . is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation" (citations omitted)).

At the very least, here, there is evidence of a close temporal proximity between the adverse action and the protected activity. After Joyce reported his concerns to the DOL in January 2010, Joyce's standing at Upper Crust began to deteriorate – receiving unexpected criticisms only months later and being forced to quit within six months. D. 85 ¶¶ 19-26. Additional evidence of a causal connection between Joyce's protected activity and the adverse action exists here, however, where the record indicates that Joyce regularly reported his concerns regarding Upper Crust's treatment of its employees to several of Upper Crust's owners and managers, both before and during the second DOL investigation. Id. ¶¶ 14-17. Joyce specifically reported to Upper Crust owner Higgins and CFO Marcus that he was concerned that Tobins's requirement that the employees remit their back pay was illegal. Id. ¶ 16. Moreover, Joyce informed manager Botelho that he was planning on reporting Tobins's alleged remittance requirement to the DOL and subsequently confirmed to Botelho that he had done so. Id. ¶¶ 14, 15. Furthermore, after Joyce resigned, Tobins admitted to Joyce that he had access to, and was

reviewing, Joyce's phone records.  Id. ¶¶ 28, 29.  Tobins seems to acknowledge that Joyce's final

pay check was reduced based on the personal calls Joyce made from his company cell phone, see

D. 100 at 3-4, which is the same phone that Joyce contends he used to notify the DOL of Upper

Crusts wage practices.  Taken together, these factual allegations are sufficient to support the

inference of a causal connection between the adverse action and Joyce's report to the DOL.

D. 85 ¶ 29.

Notably, Tobins has presented no evidence to contest that Joyce complained to managers

about Tobins's remittance requirement or that Joyce told Botelho of his intention to notify DOL

with his concerns.  Nor does Tobins dispute that in early 2010, soon after Joyce's complaint to

DOL, Upper Crust management began to express concerns about Joyce's job performance.

Rather, Tobins simply denies that he knew, prior to Joyce's resignation from the company, that

Joyce had reported anything to DOL regarding Upper Crust's conditions of employment.  See

Tobins Aff., D. 82-2 ¶¶ 2, 3.  Tobins's lack of knowledge is disputed by Joyce in light of the

circumstantial evidence cited above, however, and as such, Tobins's affidavit, standing alone, is

insufficient to demonstrate an absence of a genuine issue of material fact.

Tobins offers a different version of events, of course, arguing that there was a legitimate

reason for Joyce's worsening relationship with management.  Tobins contends that

management's behavior toward Joyce was warranted and was due to deterioration in Joyce's job

performance, not Joyce's report to DOL.  D. 100 at 2-3.  Indeed, the FLSA anti-retaliation

provision does not prohibit necessary business and employment decisions "simply because doing

so may affect an employee who successfully asserted FLSA-protected rights."  Blackie, 75 F.3d

at 723.  All the provision mandates is "that an employer must put to one side an employee's

lawful efforts to secure rights assured by the FLSA."  Id.  Here, Tobins argues that Joyce was

initially an "effective" employee, but that "[a]s he took on more responsibility, it seemed somewhat overwhelming for him, and he was not as effective." D. 100 at 8. Tobins further argues that Joyce was not spending enough time in his assigned stores and that Tobins and the other owners had to speak with him about being present more often. Id. at 8-9. As to Tobins's May 2010 phone call to Joyce regarding a theft at an Upper Crust location, Tobins contends that Joyce had left a spare set of keys to the store safe out on the counter, and that when Tobins called to speak with Joyce about the incident that he was "upset," in part, because he had a hard time reaching him. Id. at 2-3. Tobins suggests that the episode called into question Joyce's competence and that, when Tobins confronted Joyce, Joyce got very upset and tendered his resignation. Id. at 11. Finally, Tobins argues that his behavior was inconsistent with someone who knew that Joyce had made a report to the DOL, especially since Tobins "never asked [Joyce] why he was calling DOL" and because Tobins allowed Joyce to complete his two-week notice rather than terminating his employment effective immediately. Id. at 4. While Tobins is free to make these arguments to the factfinder, they are insufficient to demonstrate the absence of a genuine issue of material fact regarding Tobins's knowledge of Joyce's complaint to the DOL.

In sum, Joyce and Tobins offer different versions of events. These different narratives establish a genuine dispute of material fact. Accordingly, the Court concludes that Tobins has failed to show an absence of material fact as to Joyce's FLSA retaliation claim.

**B.     Retaliation Claim Under Mass. Gen. L. c. 149, § 148A**

Joyce also asserts a retaliation claim under the Wage Act, Mass. Gen. L. c. 149, § 148A. The Wage Act's anti-retaliation provision prohibits an employer from penalizing an employee "in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter." Mass. Gen. L. c. 149, § 148A. The Wage Act

11

further provides that "[a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general or any other person . . . shall have violated this section . . . ." Id. The purpose of the anti-retaliation provision is "to encourage enforcement of the wage laws by protecting employees who complain about violations of the same." Smith v. Winter Place LLC, 447 Mass. 363, 368 (2006).

Here, Joyce bears the burden of showing that Tobins's justification for the adverse action is pretextual and that there is "a causal connection between [Joyce's] action and [Tobins's] adverse action." Belghiti v. Select Restaurants, Inc., No. 10–cv–12049-GAO, 2014 WL 1281476, at *4 (D. Mass. Mar. 31, 2014) (citation omitted). "A plaintiff may establish pretext using circumstantial evidence based on the temporal proximity between a plaintiff's action and a defendant's adverse action." Id. As with the FLSA claim discussed above, then, Joyce need only show a causal connection between his protected activity and the adverse action to create an inference of retaliation. For the reasons discussed in detail above, the Court concludes that there is a genuine issue of material fact whether Tobins's knew of Joyce's report to the DOL and retaliated against him in violation of the Wage Act. In addition, the Court notes that when considering summary judgment motions based on issues such as knowledge, the Court should exercise particular restraint. Id. (noting that "[c]ourts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent"). Accordingly, concludes that Tobins has failed to show an absence of material fact as to Joyce's retaliation claim under the Wage Act.

**VI.    Conclusion**

For the foregoing reasons, the Court DENIES Tobins's motion for partial summary judgment, D. 87.  In addition, the Court ALLOWS IN PART and DENIES IN PART Tobins's motion to strike, D. 90 and 91.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge